[Crim. No. 2906.   Third Dist.   Dec. 30, 1958.]

THE PEOPLE, Respondent, v. HOLLIE CROMEENES, Appellant.

*Assigned by Chairman of Judicial Council.

Lawrence M. Goldstein, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Lloyd Hinkelman, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—Appellant was convicted of statutory rape. The cause was tried to the court, a jury having been waived.

On April 18, 1958, appellant was living with Marie Sutton, the mother of the complaining witness. He described Marie as his common-law wife. The relationship had existed for some time. He had a child by Marie. The complaining witness, 13 years of age, lived with the couple. The girl testified that on April 1, 1958, at about 9 p. m., and after she had gone to bed, appellant came to her bed and had intercourse with her. A few days thereafter she went to her grandmother and told her about the incident. On April 8th, she and her grandmother went to the district attorney's office. Appellant was arrested April 9th in Sacramento where he was in jail for some minor offense. He made a statement to a police officer and a deputy district attorney of San Joaquin County, which

amounted to a complete confession. At the trial, after the girl had testified, the prosecution over defense objections introduced the confession of appellant in evidence and rested. Appellant testified that he did not have intercourse with the girl and that the statement he made to the officers had been obtained as a result of a threat by the district attorney's office to arrest his common-law wife. He said that her physical condition was such that if she were placed in jail she would not, in his opinion, have lived 30 days and that he would have confessed to anything to prevent her arrest. He did not deny that he had made the statements introduced in evidence, but did assert that the statements were false.

The errors complained of revolve around the proceedings to determine whether or not appellant's confession had been voluntary. A stenographic reporter had been taken to Sacramento with the officers and at the trial he was made a witness and asked to read the conversation between the officers and appellant. He testified that appellant's statements had been made voluntarily. This was challenged and he was taken on cross-examination. It then appeared that the officers had talked with appellant before the witness had been asked to come in and take the statement and that the witness did not know what occurred prior to his being called in. Thereupon the deputy district attorney, a Mr. Corren, was called by appellant to testify concerning the conversations that preceded the formal statement. Appellant contends that his counsel's examination of the deputy was prejudicially curtailed by the trial court. The following occurred: The witness testified that before the statement was taken he had a conversation with appellant. He was asked if during that conversation he had informed appellant at any time that he had sufficient evidence to prosecute Marie and that it was probable that some action would be taken. This the witness denied. He was then asked if there was anything said concerning Marie, and the witness replied: "A. Yes, there certainly was a conversation concerning his wife. Q. Yes, sir. A. Would you like to hear what it was? A. Just a moment until I ask the question. THE COURT: I hope you are not going to call Mr. Corren a liar? MR. CHARGIN [Attorney for defendant]: No, Your Honor, no, Your Honor. MR. CHARGIN: Q. Sir, in reference to this conversation, was there any mention of her being prosecuted? A. There was no mention of her being prosecuted. Q. Was there any mention of her being arrested? A. There was no mention of her being arrested. Q. Do you recall her [sic] say-

ing that 'We could have taken the girl's mother to jail yesterday but we did not want to do that?' A. I did not say that. Q. Was there anything said of a similar nature? A. There was nothing said of any similar nature at all as to that. MR. CHARGIN: I have no further questions.''

Appellant contends that the statement by the court had the effect of curtailing his counsel's examination of the deputy district attorney. The record does not bear this out. Apparently, his counsel completed his examination and ended the same when it developed that the deputy district attorney denied there had been any talk of arresting or prosecuting appellant's common-law wife.

■ Appellant next contends that the testimony of the prosecuting witness is so clearly false and unbelievable as to be entitled to no credence whatsoever. The contention cannot be sustained. After the girl had testified to appellant's commission of the act charged, it developed on cross-examination that, after she and her grandmother had gone to the district attorney and complained of appellant, she had stated to a neighbor, a Mrs. Padgett, that the charge she had made against appellant had been wholly false. It developed further that she had made a like statement in a conversation with appellant's counsel. Mrs. Padgett, sworn as a witness, testified that the girl had admitted to her that her charges against appellant were false; that she then advised her to go to the district attorney and the girl refused, stating that she was afraid of what would happen to her in view of the complaint she had made. It is unnecessary to pursue the matter further. Her credibility was a question for the trial court and from comments made by the trial judge upon the submission of the case for decision it appears that he considered the girl had been pressured and confused, after informing against the appellant, by members of her household, with the result that she had made the statements concerning falsity of her complaint. The trial court indicated further that, although appellant had denied he had told the truth to the officers, the statement he had admittedly made to them was couched in such language and was of such tenor as to indicate strongly he had told the truth to the officers and had falsified at the trial. The record presents a situation where it was clearly a matter for the trial court upon conflicting testimony and conflicting inferences reasonably to be drawn to decide where the truth lay.

■ Appellant charges misconduct of the trial judge prejudicial to his cause. During the cross-examination of the com-

plaining witness when she was being questioned concerning the conflicting statements she had made, she began to cry. The following occurred: "Q. You were lying then, also? A. Yes. THE COURT [Intervening] : Now, it is the duty of the Court to protect the witness from harsh and abusive treatment of counsel, and counsel is admonished and warned." The cross-examination continued until the following occurred: "Q. You also remember telling Mrs. Padgett that you were afraid to go to the District Attorney and tell them that you had told a lie about Hollie [appellant] because of the fact that you were afraid of what they would do, you remember that? A. Yes. Q. You do? THE COURT [Intervening] : Counsel, I wish you would not use the word 'lie' and 'liar' in the courtroom. MR. CHARGIN: Yes, Your Honor. THE COURT: My only suggestion would be that there are ways of using that phrase in other forms. Of course, you are dealing with a child. I have seen that expression used on grown men and the lawyer taken right out on the courthouse lawn and had the hide taken off of him. It has happened to members of the Bar. And I would suggest that when you start with children you might work up to grown people and have some bad bruises some day."

If this case had been tried to a jury the foregoing comment of the trial judge might well have worked much mischief. On the other hand, had the case been tried to a jury it is not likely the comment would have been made. Apparently the trial court strongly objected to the use of the terms "lie" and "liar" during the cross-examination of the 13-year-old girl, but his suggestions as to proper retribution for a lawyer so conducting himself were unnecessary and not to be commended. In our view, however, the record will not support an inference that the court was prejudiced against the appellant because of what to it was needlessly offensive conduct toward the witness. Although the girl had made squarely conflicting statements concerning the guilt of appellant, the appellant had made a statement frankly confessing that the complaint she had made to the district attorney and upon which he had been charged was true, with a strong implication, by the way in which he made it and the description he gave of the event, that the incident complained of was one in a series. Upon the whole record we cannot sustain the contention of defendant that he did not receive a fair trial.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.